# Richmond

C. C. Peyton, Superintendent, Etc. v. Leonard French.

April 25, 1966.

Record No. 6167.

Present, All the Justices.

*W. Luke Witt, Assistant Attorney General* and *Reno S. Harp, III, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the plaintiff in error.

*Louis Koutoulakos,* for the defendant in error.

I'Anson, J., delivered the opinion of the court.

This is an appeal by C. C. Peyton, superintendent of the Virginia State Penitentiary, from an order entered in a habeas corpus proceeding declaring void the sentences under which Leonard French, the petitioner, was being held in the penitentiary and ordering petitioner's release from such confinement and remanding him to the proper jail authorities for further proceedings by the Commonwealth if it be so advised.

On December 6, 1963, French filed an original petition for a writ of habeas corpus *ad subjiciendum* in this Court, attacking certain judgments of conviction in the Circuit Court of Fairfax County, Virginia, on the ground that he had not been given a proper hearing in the Juvenile and Domestic Relations Court of that county and that he was being illegally detained in the penitentiary. After requiring Peyton to file an answer to the petition, we granted the writ and returned it to the Circuit Court of Fairfax County for a plenary hearing on petitioner's allegations. It is from the order entered in the circuit court, holding that petitioner was illegally detained, that the Commonwealth appeals.

The record shows that on July 17, 1961, petitioner, who was 16 years of age at the time, was arrested on a warrant issued pursuant to a petition filed in the Juvenile and Domestic Relations Court of Fairfax County, charging him with being a runaway. On the following day he was brought before the judge of that court for a hearing on the charge and petitioner's parents and a probation officer were present. During the course of the hearing Detective O'Connor advised the court that he was investigating several grand larcenies and burglaries and he suspected that petitioner was involved in them. The judge questioned petitioner about the offenses and he admitted that he was involved. At the conclusion of the hearing on the runaway charge petitioner was committed to the State Department of Welfare and Institutions, and the judge directed the detective to make a

complete investigation of the alleged grand larceny and burglary charges and to file the necessary petitions. He further stated that he was going to "certify" the felony charges against the petitioner to the grand jury.

On August 10, 1961, Detective O'Connor filed six separate petitions charging petitioner with larceny of automobiles and four petitions charging him with breaking and entering certain properties.

On August 11, 1961, the judge of the juvenile court summarily acted upon the petitions while petitioner was confined at the Beaumont School for Boys. Neither of petitioner's parents was present nor had they received any notice to appear, and a guardian *ad litem* was not appointed to represent the interest of the petitioner. The judge recited in separate orders based on each petition that petitioner was charged with an offense which, if committed by an adult, could be punished by confinement in the penitentiary, and "certified" him to stand trial as an adult and to be held for action by the grand jury in the Circuit Court of Fairfax County, pursuant to the provisions of § 16.1-176, Code of 1950, as amended, 1960 Repl. Vol. In each order it was also noted that a report of the "investigation of the physical, mental, social conditions and personality of * * * [petitioner] and the facts and circumstances concerning the violations of the law * * *" was before the court.

Subsequent to his runaway conviction petitioner was returned to Fairfax county, pursuant to an order entered in the juvenile court of said county on September 1, 1961, which recited that petitioner was charged with *four* felonies and had been "certified" to stand trial as an adult in the circuit court of the county. On September 11, 1961, the grand jury returned ten separate felony indictments charging him with grand larceny and statutory burglary. The trial court appointed counsel to represent petitioner, and upon his arraignment petitioner entered pleas of guilty to each indictment. At the time the cases were tried in the circuit court petitioner was 17 years of age, and the trial court had before it the report of the investigation of the physical, mental and social condition and personality of petitioner which had been prepared pursuant to the direction of the juvenile court. On November 3, 1961, after receipt of the pre-sentence report, petitioner was sentenced to five years in the penitentiary on each of two grand larceny charges. Lesser sentences were imposed in the remaining cases and they were ordered to run concurrently with the two five-year sentences.

Peyton says that the trial court erred in holding (1) that the peti-

tioner did not have a proper hearing in the juvenile and domestic relations court; and (2) that the statutes relating to proceedings in the juvenile court are jurisdictional and not procedural, and that the irregularities in the proceedings were properly cognizable in a habeas corpus proceeding.

The pertinent provisions of the Juvenile and Domestic Relations Court Law for the purpose of this appeal are found under Title 16, ch. 8, arts. 1 and 3, Code of 1950, as amended, 1960 Repl. Vol. (§ 16.1-139 ff.).

Section 16.1-164 provides the initial steps to be taken when a juvenile court receives reliable information that any child is within the purview of the law relating to juveniles and subject to the jurisdiction of the court.

Section 16.1-166 provides that after a petition has been filed pursuant to § 16.1-164, unless all the proper and necessary parties appear, the court *shall* issue a summons reciting the substance of the charge and requiring all proper or necessary parties to appear at the time and place designated for the hearing, and if the person or persons summoned shall be other than the parent or guardian of the child, then the parents shall be notified of the pendency of the case.

Section 16.1-167 relates to service of the summons referred to in § 16.1-166.

Section 16.1-172 provides that *no hearings shall be held* on a petition until the parent or parents of the child, if residing within the State, have been notified.

Section 16.1-173 provides that when no person required to be notified under § 16.1-172 is present in court at the time of the hearing, before proceeding with the hearing the court *shall* appoint a probation officer or a discreet and competent attorney at law as guardian *ad litem* to represent the interests of the child, and such guardian *ad litem* shall be present at the hearing.

Section 16.1-174 provides that in cases wherein a summons is necessary at least three days shall intervene between the service of such summons and the hearing, if objection to an early hearing be made by the parties served or the guardian *ad litem* appointed to represent the child.

Code § 16.1-176 provides, in part, that if a child fourteen years of age or over is charged with an offense which if committed by an adult could be punishable by confinement in the penitentiary, the court, after an investigation of the physical, mental and social condition and personality of the child and a hearing thereon, may, in its

discretion, retain jurisdiction or certify such child for proper criminal proceedings to the appropriate court of record having criminal jurisdiction of such offenses if committed by an adult.

Peyton does not contend that petitioner had a hearing on August 11, 1961, when the judge of the juvenile court certified the ten felonies to the circuit court for petitioner to be tried as an adult, but he says that petitioner was heard on the charges on July 18, 1961, and that his parents were present at the hearing.

We do not agree with the contention that petitioner was given a hearing on the felony charges on July 18, 1961. At that hearing petitioner was before the court only on the charge of being a runaway, and he was committed to the Department of Welfare and Institutions on that charge. When it developed during the course of the hearing that petitioner was involved in *several* grand larcenies and burglaries which were under investigation at the time, the judge directed Detective O'Connor to complete his investigation and file the petitions required under Code § 16.1-164.

It is true that the petitioner admitted that he was involved in the several felonies referred to in the testimony and the judge stated that he was going to certify petitioner to the circuit court to be tried as an adult on the felonies brought to his attention, but petitioner was not before the court at that time on any of the charges. The record does not show how many or which of the charges he said he was guilty of when the judge questioned him, and the investigation had not been completed at that time. Petitioner was not charged with the ten felonies until the petitions were filed on August 10, 1961, and the court acted on the petitions the next day without a hearing and without giving notice to all proper and necessary parties to be present.

Since the court did not follow the mandatory requirements of Code §§ 16.1-166, 16.1-167, 16.1-172, 16.1-173 and 16.1-174, *supra*, the petitioner was not afforded a proper hearing under the Juvenile and Domestic Relations Court Law before being sent on to the circuit court to be indicted and tried as an adult.

■ The crucial question presented is Peyton's contention that the statutes relating to proceedings in juvenile courts are procedural and not jurisdictional, and that the irregularities occurring in the juvenile court cannot be attacked on a petition for a writ of habeas corpus.

Peyton argues that since the judge of the juvenile court determined the petitioner to be an adult, the proceedings in that court should be regarded in the same manner as a preliminary hearing for an adult felon, and that since such proceedings are procedural and not juris-

dictional they may not be attacked on a petition for a writ of habeas corpus. *Snyder* v. *Commonwealth*, 202 Va. 1009, 121 S. E. 2d 452, and *DeToro* v. *Pepersack*, 332 F. 2d 341 (4th Cir., 1964), are relied upon in support of this argument.

In *Snyder* v. *Commonwealth, supra,* an adult defendant urged that his conviction was void because he had been indicted prior to the completion of a preliminary hearing provided for under provisions of Code § 19.1-163.1, 1960 Repl. Vol. In overruling Snyder's contention, we held that the right to a preliminary hearing afforded by that Code section was not jurisdictional, and since defendant had made no objection to trial on the indictment or lack of preliminary hearing until 47 days after the final order sentencing him, he had waived his right.

In *DeToro* v. *Pepersack, supra,* petitioner sought his release on habeas corpus because counsel had not been appointed to represent him at two preliminary hearings wherein he entered pleas of not guilty to a charge of homicide. In dismissing the petition the court held that the petitioner had not been denied his constitutional rights since the ultimate determination of guilt or innocence was not involved in the preliminary hearing under the Maryland statute (which is also the case in Virginia) and that he had not been prejudiced by the failure of the court to appoint counsel.

The holdings in the aforementioned cases are not applicable here. Code § 19.1-163.1 applies to a preliminary hearing under general criminal procedure and not to an offense committed by a child under the purview of the Juvenile and Domestic Relations Court Law. A hearing held under the Juvenile and Domestic Relations Court Law is not as limited in its scope as a preliminary hearing under the criminal procedures applicable to an adult. The juvenile court judge is expressly empowered with the discretion of either retaining jurisdiction of the child charged with the commission of a felony or certifying the child for criminal proceedings in a proper court of record. Code § 16.1-176.

In *Tilton* v. *Commonwealth*, 196 Va. 774, 85 S. E. 2d 368, we reversed Tilton's conviction because he was denied the benefit of the investigation required by § 16-172.42, now Code § 16.1-176 (b).[1] 1960 Rep. Vol. We held that the requirement for an investigation of the physical, mental and social condition and personality of the child was jurisdictional, and that the circuit court did not have jurisdiction

---

1. "May" substituted for "shall" in line one of subsection (b).

to try Tilton without the required report. See also *Norwood* v. *City of Richmond*, 203 Va. 886, 128 S. E. 2d 425.

It is true that in *Durrette* v. *Commonwealth*, 201 Va. 735, 113 S. E. 2d 842, we held that the alleged failure to comply with Title 16, ch. 8, art. 4, §§ 16.1-194, 16.1-195 and 16.1-197, of the Juvenile and Domestic Relations Court Law, which dealt with the manner of arresting, transporting and incarcerating a juvenile, did not deprive Durrette of any constitutional right under the evidence because those particular statutes were procedural in nature. That case is readily distinguishable on the facts and the statutes involved from the present case.

It was the intent of the General Assembly in enacting the Juvenile and Domestic Relations Court Law that it be liberally construed. The powers conferred are to be exercised to effect its beneficial purposes, and in all proceedings concerning the disposition, custody and control of children coming within the purview of the law the court shall proceed upon the theory that the welfare of the child is the paramount concern of the State. See § 16.1-140, Code of 1950, as amended, 1960 Repl. Vol. Code § 16.1-158 gives the juvenile court exclusive original jurisdiction over the offenses alleged to have been committed by the petitioner, and the clear purpose and intent of the Juvenile and Domestic Relations Court Law cannot be achieved if it is not mandatory that the proceedings set forth in §§ 16.1-164, 16.1-166, 16.1-167, 16.1-172, 16.1-173 and 16.1-176(a) be complied with. Indeed, the very language of the statutes makes it mandatory that the aforesaid mentioned statutes be followed before criminal jurisdiction in a proper court of record comes into being.

Here the convictions in the circuit court resulted from the judge of the juvenile and domestic relations court taking the petitioner from boyhood to manhood by "certifying" him for grand jury action and trial as an adult without proper hearing. The circuit court derived its purported jurisdiction through the action taken in the juvenile court. The action of the juvenile court judge in dealing with the petitioner in his absence without a hearing and without notice to his parents, and the failure of the court to appoint a guardian *ad litem* to represent petitioner's interest, violated the mandatory provisions of the Juvenile and Domestic Relations Court Law and the requirements of due process, and was a denial of petitioner's constitutional guarantee under § 8 of the Constitution of Virginia. Cf. *Kent* v. *United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.ed. 2d 84. See also Annotation, 90 A. L. R. 2d 293-295, Juvenile Delinquency —Process.

We are of opinion that a preliminary hearing in the juvenile court was jurisdictional and not procedural, and that before the circuit court could acquire jurisdiction to try petitioner there must have been a compliance with the provisions of the Juvenile and Domestic Relations Court Law. Thus the failure of the juvenile court to comply with the applicable statutes rendered the circuit court proceedings void and the petitioner was unlawfully imprisoned, and he is entitled to be discharged subject to the right of the Commonwealth to prosecute him again if it be so advised.

We deem it proper, in affirming the judgment of the court below, to call attention to the fact that the records show petitioner is now 21 years of age and this fact would make it improper under Code § 16.1-159, as amended, to try him again as a child coming under the purview of the Juvenile and Domestic Relations Court Law. Since he cannot be retried as a juvenile, irrespective of his age at the time the offenses were committed, the proper procedure would be to follow the criminal procedure applicable to an adult. It thus follows that since the circuit court did not have jurisdiction over the petitioner because of the lack of proper proceedings in the juvenile court, the petitioner should be tried on new indictments if the Commonwealth proceeds further against him. See Annotation, 89 A. L. R. 2d 507, Juvenile Court—Jurisdiction—Age. Cf. *State* v. *Dehler*, 257 Minn. 549, 102 N. W. 2d 696, 89 A. L. R. 2d 496.

For reasons stated, the judgment of the court below is

*Affirmed.*