## Richmond

## LESTER WAYNE JONES

### v.

## COMMONWEALTH OF VIRGINIA

January 11, 1980.

Record No. 781665.

Present: Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

*Richard G. Poinsett* for appellant.

*James E. Kulp, Deputy Attorney General* (*Marshall Coleman, Attorney General,* on brief), for appellee.

CARRICO, J., delivered the opinion of the Court.

This appeal involves a claim of double jeopardy in a case where felonious offenses were committed by an adult defendant against a juvenile victim. The determinative issue is whether in such a case the requirement of a preliminary hearing is jurisdictional or merely procedural in nature.

The case arose out of an incident occurring December 1, 1977, in which the defendant, Lester Wayne Jones, and an accomplice robbed Joseph Viets at gunpoint. In the course of the encounter, the accomplice shot at Viets. As a result of the incident, the defendant was charged with attempted murder, robbery, and the use of a firearm while committting robbery.

The defendant was given a preliminary hearing on the charges in general district court, criminal division, and held for the grand jury. He was indicted by the grand jury and then tried upon his pleas of not guilty in the circuit court, sitting without a jury.

During presentation of the Commonwealth's evidence at the trial in circuit court, it was disclosed that the victim, Joseph Viets, was only 17 years old at the time the offenses were committed against

him. At the conclusion of the Commonwealth's case, the defendant moved to dismiss the indictments on the ground that, because the victim was a juvenile and the preliminary hearing had not been held in juvenile and domestic relations district court, the circuit court was without jurisdiction in the case. The court granted the motion and dismissed the indictments.

The defendant was arrested and charged with the same offenses. This time, he was given a preliminary hearing in juvenile and domestic relations district court. He was certified to the grand jury and reindicted. He then moved the circuit court to dismiss the indictments on the ground that "continued prosecution would constitute double jeopardy." The court denied the motion. In a subsequent trial, the defendant was convicted of all three charges and sentenced to a total of 21 years in the penitentiary, with 12 years suspended.

██ Pertinent to resolution of the issue involved here are the following provisions of Code § 16.1-241:

"[E]ach juvenile and domestic relations district court shall have . . . exclusive original jurisdiction . . . over all cases, matters and proceedings involving:
   "....
   "I. The prosecution and punishment of persons charged with ill-treatment, abuse, abandonment or neglect of children or with any violation of law which causes or tends to cause a child to come within the purview of this law, or with any other offense against the person of a child except murder and manslaughter; provided, however, in such cases of murder or manslaughter where additional charges arise out of the same transaction, the juvenile judge may transfer jurisdiction over those additional charges to the general district court; provided further, that in prosecution for other felonies over which the court shall have jurisdiction, such jurisdiction shall be limited to determining whether or not there is probable cause. . . ."

On appeal, the defendant continues to assert that his initial preliminary hearing was defective under Code § 16.1-241(I) because the victim was a juvenile and the hearing was not held in juvenile and domestic relations district court. He now says, however, that the defect was not jurisdictional but was merely procedural.[1] His

---

[1] The Attorney General makes no point concerning this change in the defendant's position.

argument is that the hearing afforded an adult defendant under § 16.1-241 (I), as with the preliminary hearing in an ordinary criminal case, is not a matter of constitutional requirement but of statutory right. Because the right to such a hearing is merely statutory, the defendant maintains, ·any .defect in the hearing is waived unless timely raised and, therefore, only a question of procedure, and not of jurisdiction, is involved.

In his case, the defendant says, the defect in his initial preliminary hearing was not raised before commencement of his first trial in circuit court and, therefore, the defect was waived. Accordingly, the defendant concludes, the circuit court had jurisdiction over his case and jeopardy attached to the proceeding, thus requiring that his plea of double jeopardy be sustained when the Commonwealth attempted to prosecute him a second time.

The defendant acknowledges that in *Peyton* v. *French,* 207 Va. 73, 80, 147 S.E.2d 739, 743 (1966), we held jurisdictional the requirement of the juvenile court statutes relating to a hearing in juvenile court before certification of a case to the grand jury. The defendant argues, however, that the decision in *French* was required because the case involved a juvenile *offender,* rather than a juvenile victim. The rationale of *French,* the defendant says, should be confined to cases involving juvenile offenders and not extended to situations where the only basis of the juvenile and domestic relations district court's jurisdiction is the presence of a juvenile victim. There is no "logical reason," the defendant opines, to treat differently a hearing in juvenile and domestic relations district court with an adult defendant and a juvenile victim, on the one hand, and, on the other, a hearing in general district court where both defendant and victim are adults.

In our opinion, the language of Code § 16.1-241 (I) is clear and unambiguous. In no uncertain terms, the language vests in juvenile and domestic relations district courts *exclusive original jurisdiction* to conduct preliminary hearings in cases of adult defendants charged with felonious offenses, except murder and manslaughter, committed against juvenile victims. And, while the Code section does permit the preliminary hearing in general district court of additional charges arising out of the same transaction in which the murder or manslaughter of a juvenile occurs, even this authority of a general district court is dependent upon a transfer from a juvenile and domestic relations district court.

The phrase "exclusive original jurisdiction" in Code § 16.1-241

must be given its plain meaning. When given such meaning, the phrase imports requirements of a jurisdictional, rather than procedural, nature, and it signifies exclusivity of jurisdiction in a juvenile and domestic relations district court to conduct a preliminary hearing in the type of case involved here.

The wisdom of the enactment of statutory provisions having these effects does not concern this court. We believe, however, that there is "logical reason," apparent on the face of the juvenile court statutes, for the requirement that felony cases, except murder or manslaughter, involving juvenile victims must have their commencement, as a jurisdictional proposition, in juvenile and domestic relations district court. The juvenile court statutes evince a clear legislative intent that the welfare of the child shall be paramount. In the implementation of that intent, no distinction is made between a child who is a defendant and one who is a victim. By including juvenile victims among the classes over which a juvenile and domestic relations district court has jurisdiction, the General Assembly has recognized the obvious situations where juvenile victims would have as great a need of the protective measures available to such a court as juvenile offenders.

For these reasons, we disagree with the defendant's contentions concerning whether the preliminary hearing required by Code § 16.1-241(I) is jurisdictional or procedural. For the same reasons, we must also disagree with the United States Court of Appeals for the Fourth Circuit in its decision in *Nottingham* v. *Zahradnick,* 573 F.2d 193, *cert. denied,* 439 U.S. 970 (1978).

*Nottingham* involved the interpretation of Code § 16.1-158(7), which was amended and reenacted in 1978 as § 16.1-241(I), the focus of the present dispute. The only change resulting from the legislative action was the addition of the proviso relating to the transfer by a juvenile and domestic relations district court to a general district court of additional charges arising out of the same transaction in which the murder or manslaughter of a child occurs. This change does not affect the outcome of this case or alter our view of *Nottingham.*

In *Nottingham,* the Fourth Circuit, upon the same issue that is involved here, held that Code § 16.1-158(7) was procedural only. Accordingly, the Court ruled that jeopardy does attach to a circuit court proceeding involving a felony committed by an adult against a juvenile even though the preliminary hearing in the case has not been held in juvenile and domestic relations district court. The Fourth Circuit found that the "juvenile court statutes were not in-

tended for the protection of those in [the adult defendant's] class." 573 F.2d at 194. We have no quarrel with this proposition, but we believe that it misses the point and overlooks the true purpose of the statutes in question, *viz.*, the protection of the *juvenile*, whether defendant or victim.

The Fourth Circuit found also that Code § 16.1-158(7) could be interpreted to "permit concurrent jurisdiction with other courts not of record for preliminary hearings for adults." *Id.* This finding may be correct under both the old and the new versions of § 16.1-241(I) when the sole charge against an adult is the murder or manslaughter of a child. It may also be correct under the new version of § 16.1-241(I) where additional charges connected with the murder or manslaughter of a child have been transferred from a juvenile and domestic relations district court to a general district court. The finding is not correct, however, where, as in both this case and *Nottingham,* the charges against the adult involve a juvenile victim but not the death of the child. Indeed, as we have previously indicated in this opinion, when the phrase "exclusive original jurisdiction," employed in the statute, is given its plain meaning, it connotes exclusivity of jurisdiction in juvenile and domestic relations district courts to conduct preliminary hearings in the type of case involved here.[2]

■ Alternatively, noting that one of the charges against him was attempted murder, the defendant argues that, except for punishment, an attempt to commit a crime is treated the same as the substantive crime. Thus, the defendant concludes that because, under § 16.1-241(I), murder is excepted from the requirement of a preliminary hearing in juvenile and domestic relations district court, the circuit court had jurisdiction at least over the charge of attempted murder and jeopardy attached to that charge.

The ready answer to this argument is that the exception in Code § 16.1-241(I) is intended, by its very language, to apply only to cases of *actual* murder or manslaughter of juveniles, and not to mere attempts to commit those crimes. The reason for the distinction is obvious: where the murder or manslaughter of a child has occurred, there is no live juvenile victim in need of the protection of the juvenile statutes.

---

[2] We note a statement in the Fourth Circuit's opinion to the effect that this court has held that an indictment by a grand jury "preempts an adult defendant's right to a preliminary hearing." 573 F.2d at 195. No decision of this court is cited, and we disavow any application of the statement to the situation where the charges against an adult defendant involve a juvenile victim.

■ We hold that the defect in the initial preliminary hearing in this case was jurisdictional in nature and that, as a result, the circuit court did not have jurisdiction of the defendant's case in the first trial. Accordingly, jeopardy did not attach in that proceeding. *See Ball* v. *United States,* 163 U.S. 662, 669 (1896). The trial court, therefore, did not err in denying the defendant's plea of double jeopardy and in permitting the second prosecution to continue. This results in the affirmance of the judgments appealed from.

*Affirmed.*

POFF, J., concurring.

I concur fully in the judgment and in the rationale of the Court's opinion. I would like to add, however, that the defendant's claim of double jeopardy would not lie even if jeopardy had attached at the aborted trial.

When an accused seeks and obtains the termination of a trial on a ground unrelated to a determination of guilt or innocence, the prohibition against double jeopardy generally does not prevent a retrial. This principle was established recently in *United States* v. *Scott,* 437 U.S. 82 (1978). There, the United States Supreme Court held that the Double Jeopardy Clause does not bar the government's appeal from a ruling granting a defendant's motion, made at the conclusion of the evidence, to dismiss for prejudicial pretrial delay. In so doing, the Court expressly overruled *United States* v. *Jenkins,* 420 U.S. 358 (1975), which had held that "regardless of the character of the midtrial termination, appeal was barred if 'further proceedings of some sort, devoted to the resolution of factual issues going to elements of the offense charged, would have been required upon reversal and remand.'" 437 U.S. at 94. The *Scott* decision authorized retrial upon remand. Thus, the Double Jeopardy Clause does not bar retrial of a defendant who has been granted a termination before a determination of guilt or innocence, at least where the accused's request was not necessitated by judicial or prosecutorial "bad faith conduct", *United States* v. *Dinitz,* 424 U.S. 600, 611 (1976).

Aside from the fact defendant assumed inconsistent positions in the two proceedings in the circuit court (a fact that hardly weighs in his favor), the essential facts in the case at bar are legally indistinguishable from those in *Scott.* Upon the defendant's request, indictments were dismissed without any determination of guilt or innocence. Therefore, "the Double Jeopardy Clause, which guards against Government oppression, does not relieve defendant from the consequences of his voluntary choice." *Scott,* 437 U.S. at 99.